Jack Showell v. Commissioner. Dorothy Showell v. Commissioner.
Showell v. Commissioner
Docket Nos. 48153, 48154.
United States Tax Court
T.C. Memo 1957-22; 1957 Tax Ct. Memo LEXIS 230; 16 T.C.M. (CCH) 103; T.C.M. (RIA) 57022; January 31, 1957
*230 W. Lee McLane, Jr., Esq., Security Building, Phoenix, Ariz., for the petitioners. Earl C. Crouter, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in the income tax of the petitioners for 1949 as follows: Docket No.
Deficiency
Jack Showell
48153
$3,946.65
Dorothy Showell
48154
4,065.69
These deficiencies resulted from the respondent's determination that each of the petitioners realized income of $11,281.83 from wagering operations during 1949. On petition to this Court we held in , that the respondent should have allowed a deduction of an additional $3,000 for wagering losses. The case is again before us on remand from the , (rehearing denied), for further proceeding on the "ground that the findings were not sufficiently definitive." We therefore make the following Findings of Fact The petitioners are husband and wife and filed their separate income tax returns for 1949, prepared on the community *231 basis, with the collector for the district of Arizona. In their returns for 1949 the petitioners reported income from interest, from a partnership, and rental income from a building. No income was reported from, or loss deducted with respect to, any wagering operations. During 1949 Jack Showell, sometimes referred to as the petitioner, received money from booking bets on baseball, football and basketball games. No receipts or tickets were given for money placed on bets. The petitioner did not keep regular, adequate and permanent books and records of his wagering transactions. Petitioner had unreported income from wagering operations in 1949 amounting to $19,563.66. Opinion In determining the deficiencies herein the respondent determined that the petitioner had income of $22,563.66 from wagering operations in 1949, one-half of which was taxable to each petitioner. On the other hand, petitioners allege in their petitions that the gambling transactions in that year resulted in a loss of $2,046.26. As indicated by the opinion of the Court of Appeals herein, the burden is on the taxpayer to sustain by competent evidence his claimed deductions. In other words, it is petitioner's *232 burden to prove error in the respondent's determination, the effect of which was to disallow claimed gambling losses. To sustain that burden the petitioner relies almost exclusively upon his own testimony and that of his accountant. They told the Court in some detail how the gambling operations were carried on and described the records they kept. But the only record introduced in evidence was Exhibit 3, a single sheet of yellow foolscap, which was as follows: SPORTS - 1949
Gain
Loss
Jan. 1
$ 3,950.00
Sept. 17
$ 882.50
24
97.10
Oct. 2
3,469.35
8
6,571.95
9
686.00
15
1,363.60
22
3,211.00
29
2,026.00
Nov. 5
3,767.55
13
4,346.50
19
1,079.70
20
1,241.10
27
402.60
Dec. 3
1,016.73
3
450.00
5
20.00
6
43.00
7
21.00
1 - Rent
125.00
9
510.00
10
274.50
11
570.00
12
372.00
13
902.00
14 - W.U.
59.40
14
164.80
15
153.15
16
705.00
17
584.00
18
487.00
19
859.00
20
796.00
21
96.00
22
31.00
22 - A.P.
60.00
22 - Tele.
100.82
23
1,106.00
31
2,447.50
31 - Leech
1,350.00
$22,908.88
$23,489.97
22,908.88
$ 581.09
The petitioner and his accountant testified *233 that the figures appearing on this sheet were arrived at by adding together for a particular day the amounts to be paid winning bettors as shown on the original betting slips and tally sheets and then balancing against this the total amount of losses for that day taken from the same sources. The total of wins or losses for the day was thus obtained and that total was entered on the sheet for each day shown thereon. Aside from Exhibit 3 the petitioner maintained no account or record with respect to money received by him in his betting transactions or the sums paid out to winning bettors during the year. The original slips or tally sheets on which bets were noted at the time they were made were destroyed. None of the original betting slips or tally sheets were ever furnished to the revenue agents and neither the respondent nor this Court has had any way of testing the accuracy of the totals appearing on the foolscap sheet unless we accept as wholly true the testimony of petitioner and his accountant that every actual gain or loss was correctly entered thereon. However, as the Court of Appeals points out "the fact triers had the right to disbelieve Jack Showell and his close office *234 associate, Walsh. Similarly, they have the right to remain unconvinced, to retain an abiding doubt, and to rule against the petitioner." The Court of Appeals also states that if the fact trier "thinks that the taxpayer did suffer losses much smaller than claimed, but did suffer some losses the taxpayer cannot complain if the fact finder selects a half arbitrary, half intelligent figure for the losses." On this record we are unconvinced that the petitioner suffered wagering losses to the extent claimed. We believe, however, that he did suffer some losses in addition to those allowed by the respondent in his determination and our finding of fact as to unreported income reflects that belief. In effect, it allows the petitioner losses in the amount of $3,000 more than determined by the respondent. This is a fact case and what we have decided is necessarily limited to the facts before us. The evidence is unsatisfying and though the result may to some extent be speculative, that is the fault of the record as made almost exclusively by the petitioner and his close associate and "is not fatal". . Decision will be entered under *235 Rule 50.